**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
CIRA CALABRESE, et al.,

                           Plaintiffs,

          - against -

CSC HOLDINGS, INC., et al.,

                           Defendants.
----------------------------------------------------------X

**MEMORANDUM
AND ORDER
CV 02-5171 (DLI) (JO)**

**JAMES ORENSTEIN, Magistrate Judge:**

      Cira Calabrese and her fellow named plaintiffs, purporting to act on behalf of themselves and other similarly situated cable television subscribers, have accused defendants CSC Holdings, Inc., employees Robert Astarita, Amy Groveman, and James F. Magee, and its collection agency Allied Account Services Inc. (collectively, "Cablevision") together with Cablevision's attorneys – including the defendant law firm of Lefkowitz, Louis & Sullivan L.L.P. and individual defendants Shaun K. Hogan, Daniel J. Lefkowitz, Wayne R. Louis, and Patrick J. Sullivan (collectively, the "Attorneys") – of extorting money from them by prosecuting meritless claims arising from their alleged acquisition of "pirate" devices cable television converters. *See* Docket Entry ("DE") 163 (Fourth Amended Complaint) ("Complaint"). The defendants deny the plaintiffs' core claims and have also asserted certain affirmative defenses, reserved the right to add still others, and made a counterclaim against named plaintiff Mel Gevanter ("Gevanter"). The plaintiffs seek to strike several of those affirmative defenses as well as the reservation of rights to add others and to dismiss the counterclaim. On September 9, 2005, the Honorable Dora L. Irizarry, United States District Judge, referred the motion to me for decision. For the reasons set forth below, I now grant the plaintiffs' motion to strike the Attorneys' reservation of the right to assert new defenses and counterclaims and deny the plaintiffs' motion in all other respects.

I.      Background

The essential nature of the parties' dispute is relatively straightforward, and arises from Cablevision's efforts to combat the use of "pirate" devices. Such devices permit the user to view encrypted cable television programs that would normally be available only by means of paying a fee to a provider such as Cablevision. The use of such devices can constitute violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a) ("FCA"), and Cablevision has made a regular practice of bringing lawsuits in this court and elsewhere claiming damages for such violations. The cases often result either in a settlement or a default judgment in an amount of several thousand dollars. *See generally CSC Holdings, Inc., v. Bokee*, CV 04-5434 (ADS) (JO), DE 12 (E.D.N.Y. Mar. 1, 2006) (providing details about Cablevision's litigation practices in seeking damages under the FCA).

The plaintiffs assert that Cablevision's litigation practices, as enabled by their Attorneys, amount to an extortion scheme. In essence, they claim that Cablevision accuses subscribers who make only innocuous use of pirate devices of violating the FCA and then demand payment from them without adequately investigating whether those subscribers have actually used the devices to gain unlawful access to cable programming. By doing so, the plaintiffs claim, Cablevision and the Attorneys force such innocent purchasers of the devices to choose among three unattractive options: paying a few thousand dollars to settle an unjust claim, spending even more to mount a successful defense, or being subjected to a default judgment that can award a still larger sum in damages and attorneys' fees. Subscribers who anticipate that the first option is the lesser evil feel compelled to pay Cablevision. *See generally* Complaint ¶¶ 24-34.

The defendants respond in essence that their practices are legitimate efforts to combat the theft of cable services, and indeed express considerable skepticism that anyone possesses a pirate

device for any purpose other than an unlawful one. *See generally* DE 184 ("Cablevision Answer"); DE 189 ("Attorneys' Answer"). In addition, they raise a counterclaim against Gevanter based on his alleged violation of a previously executed settlement agreement. *See* DE 189 at 26. They therefore deny engaging in any extortionate scheme and raise defenses based on their constitutionally protected rights to engage in free speech and to petition the government for redress of their claims as well as on the plaintiffs' allegedly unclean hands.

While the parties thus have a clear understanding of each others' claims, and should presumably be anxious to have those claims proceed to resolution on the merits, they appear reluctant to allow the case to proceed beyond its initial stages. The instant dispute over the contents of the pleadings is only the latest skirmish in a long, drawn-out war over the normally simple question of what the various parties should be permitted to *assert* as their respective theories of the case, as is illustrated by the following procedural history of the litigation.

The plaintiffs filed their initial complaint on September 24, 2002, alleging that defendants conspired to extort settlements from cable subscribers in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. ("RICO"). DE 1. A month later, the plaintiffs amended their complaint as of right before an answer had been. DE 3. The month after that, the defendants moved to dismiss the amended complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. DE 8, DE 12. By order dated August 13, 2003 the Honorable Joanna Seybert, United States District Judge (to whom the case was initially assigned) granted the defendants some of the relief they requested and denied the remainder of their motion. *See Calabrese v. CSC Holdings, Inc.*, 283 F.Supp. 2d 797, 815 (E.D.N.Y. 2003) ("*Calabrese I*"). Specifically, Judge Seybert dismissed the plaintiffs' RICO claim under 18 U.S.C. § 1962(a) (alleging that the defendants invested the proceeds of a pattern of racketeering

activity in an enterprise) but denied without prejudice the motion to dismiss the claims under subsections (c) and (d) of the same statute (*i.e.*, those alleging respectively, that the defendants conducted the affairs of an enterprise through a pattern of racketeering activity and that they conspired to do so). *Id.* In light of her ruling on the motion, Judge Seybert granted the plaintiffs leave to further amend their complaint.

The plaintiffs acted on that ruling and ultimately filed a Third Amended Complaint, DE 54, on October 8, 2003 (their Second Amended complaint was further amended with the defendants' consent; *see* DE 43; DE 47; DE 49). Once again, the defendants invoked Rule 12(b)(6) in an attempt to have the claims dismissed. *See* DE 68; DE 76. Once again, Judge Seybert dismissed the claims under subsection (a) of the RICO statute (as well as certain other claims under state and federal criminal laws) and denied the motion to dismiss the claims under subsections (c) and (d) (as well as other state law claims). *Calabrese v. CSC Holdings, Inc.*, 2004 WL 3186787 (E.D.N.Y. Jul. 19, 2004) ("*Calabrese II*").

The latter ruling led to the filing of the instant Complaint (the fourth amended complaint in this case) on September 30, 2004. Cablevision and its Attorneys answered on November 3 and December 3, 2004, respectively. At a hearing on January 11, 2005, Judge Irizarry granted the plaintiffs permission to file a motion to strike certain portions of the defendants' answers. In accordance with that ruling, on March 30, 2005, the plaintiffs moved to strike Cablevision's First, Second, Third, Fourth, Sixth, and Seventh affirmative defenses and moved to strike the Attorneys' Third, Fourth, and Eighth affirmative defenses as well as paragraphs 177 and 193 of their Answer. *See* DE 205 (Plaintiffs' memorandum of law) ("Memo.") at 1, 20. The plaintiffs simultaneously filed a separate motion under Rule 12(b)(6) to dismiss the Attorneys' counterclaim against Gevanter. DE 204. Cablevision voluntarily withdrew its First and Second

4

affirmative defenses, *see* DE 208 at 1, n.1, but in all other respects the defendants opposed the motions. Judge Irizarry referred the motions to me on September 9, 2005.

II. Discussion

    A. The Motion to Strike

        1. The Applicable Legal Standard

The plaintiffs' attack on the various affirmative defenses invokes the court's authority to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Such motions are generally disfavored, *see*, *e.g.*, *Wine Markets International, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998), and should be granted only where if there is neither a question of fact nor a substantial question of law that might allow the challenged defense to succeed, and even then only if the plaintiff will be prejudiced by allowing the defense to go forward. *See Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp.2d 109, 111 (S.D.N.Y. 2005); *Federal Deposit Insurance Corp. v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 389 (E.D.N.Y. 1997) ("*Pelletreau*"); *Hoppe v. G.D. Searle & Co.*, 779 F. Supp. 1413, 1422 (S.D.N.Y. 1991) (citations and quotations omitted).

An affirmative defense previously rejected as a basis for granting a defendant's motion to dismiss may already have effectively been determined to be "insufficient as a matter of law;" such a ruling may therefore establish sufficient reason to grant a later motion to strike the affirmative defense. *See Pelletreau*, 965 F. Supp. at 390. However, even if a court has previously examined a defense in the context of a motion to dismiss, its decision to let the case proceed does not preclude it from reconsidering the validity of the challenged defense by virtue of the "law of the case" doctrine. *Oppel v. Empire Mutual Insurance Company*, 92 F.R.D. 494, 496 (S.D.N.Y. 1981) (Weinfeld, J.) ("The doctrine merely expresses the general practice of

5

refusing to reopen what has been decided. It does not constitute a limitation on the Court's power and need not be applied where no prejudice results from its omission."). Thus, while an affirmative defense previously deemed insufficient in the context of a dismissal motion "should be stricken to eliminate delay and unnecessary expense from litigating the invalid claim[s]," *Federal Deposit Insurance Corp. v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990) ("*Eckert*"), the party seeking to strike the defense must still establish the likelihood that such burdens will be incurred if the defense is allowed to proceed. *See S.E.C. v. Toomey*, 866 F. Supp. 719, 723 (S.D.N.Y. 1992) (noting that it is "well settled" that a redundant claim does not cause prejudice and need not be stricken).

2. The First Amendment And *Noerr-Pennington* Affirmative Defenses

Both Cablevision and its Attorneys raise affirmative defenses based on their constitutional rights to engage in free speech and petition the government and the related *Noerr-Pennington* immunity doctrine. *See* Cablevision Answer ¶ 177 (Seventh Affirmative Defense); Attorneys Answer ¶¶ 172-173 (Third and Fourth Affirmative Defenses). Briefly stated, the *Noerr-Pennington* doctrine immunizes a party from liability arising out of its conduct in commencing prior litigation. *See T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002); *see also California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 509 (1972) (citing *United Mine Workers v. Pennington*, 381 U.S. 657, 669-671 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127, 137 (1961). However, the doctrine provides no protection to efforts to influence governmental actions through litigation, lobbying, or other forms of speech if those efforts are merely a sham. *See T.F.T.F. Capital Corp.*, 312 F.3d at 93 (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.*, 508 U.S. 49, 60-61 (1993)). The doctrine is applicable in a wide variety of

cases, including one brought under the RICO Act. *See Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 2000 WL 1508873, *1 (2d Cir. Oct. 11, 2000) (citing *Int'l Bhd. of Teamsters, Local 734 Health Workers and Welfare Trust v. Phillip Morris, Inc.*, 196 F.3d 818, 826 (7th Cir.1999)).

The plaintiffs' attempt to strike these defenses is unavailing for two independent reasons. First, although Judge Seybert did address the *Noerr-Pennington* defense in resolving a motion to dismiss, she quite plainly did not decide that the defense is insufficient. To the contrary, Judge Seybert wrote no more than that "the Noerr-Pennington doctrine provides no immunity ... for the conduct *alleged* by the Plaintiffs." *Calabrese II*, 2004 WL 3186786 at *3 (emphasis added). In doing so, she explicitly accepted all of the plaintiffs' factual allegations – including those necessary to make *Noerr-Pennington* immunity unavailable – as true. *Id*. at *1. Accordingly, notwithstanding the court's decision on the motion to dismiss, there remains a factual issue about the defendants' state of mind in pursuing claims against the named plaintiffs (and possibly other purchasers of pirate devices) the resolution of which will determine the validity of the affirmative defenses. Under such circumstances, I may not grant a motion to strike.

A second and independent reason to deny this prong of the motion is that the plaintiffs have not demonstrated that they will suffer any prejudice if I allow the free speech and *Noerr-Pennington* defenses to proceed. The plaintiffs do no more in that regard than make a conclusory assertion that they "will be prejudiced by increased trial time and expense in responding to these defenses" if their motion is denied and cite to the decision in *Pelletreau*. *See* Memo. at 9, 11, 17, 20. Such argument does not suffice: the court in *Pelletreau*, citing the decision in *Eckert*, said no more than that the "[i]ncreased time and expense of trial *may* constitute sufficient prejudice to warrant granting a plaintiff's motion to strike." 965 F. Supp. at

389 (emphasis added). The *Eckert* decision illustrates the kind of circumstances that may indeed warrant such relief, speaking as it does of the "many months" and "extra cost" associated with litigating the challenged defenses that would result in a "substantial" delay in bringing the case to trial. 754 F. Supp. at 23. The plaintiffs' here make no such showing. Moreover, it seems almost unimaginable that they could: their task in proving an essential factual component of their claim – the proposition that the demands made by Cablevision and the Attorneys against innocent purchasers of pirate devices were made without adequate investigation – is inevitably intertwined with the merits of the *Noerr-Pennington* defense. As a result, there is no reasonable prospect that striking the latter will alleviate the burdens associated with the former. Accordingly, in the absence of any showing of prejudice resulting from permitting the challenged defenses to proceed, the motion to strike may be, and is, denied. *See Toomey*, 866 F. Supp. at 723.

### 3. The Affirmative Defense Of Unclean Hands

Cablevision and the Attorneys also have in common their invocation of the doctrine of unclean hands as an affirmative defense. *See* Cablevision Answer ¶ 176 (Sixth Affirmative Defense); Attorneys Answer ¶ 174 (Fifth Affirmative Defense). "The doctrine of unclean hands is based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff." *Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir.1998) (citation omitted). However, a defendant may not simply point to a plaintiff's otherwise irrelevant misconduct; to form the basis of the defense the alleged misconduct must relate to the claim to which it is asserted as a defense. *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 2005 WL 1164073, at *3 (S.D.N.Y. May 18, 2005).

As with their attack on the *Noerr-Pennington* immunity defense, there are two reasons why this part of the plaintiffs' motion to strike must be denied: the defense may succeed on the merits, and the plaintiffs have not demonstrated undue prejudice if the defendants are allowed such an opportunity. With respect to the merits, the decision whether to strike the unclean hands defense is a closer call than that regarding *Noerr-Pennington* immunity. The plaintiffs rightly observe that in *Calabrese II*, Judge Seybert noted that "*only* those customers who did not actually use the [pirate] decoder box will be able to show an injury from the alleged extortion" and that as a result "they will be the only customers who may qualify as putative class members." 2004 WL 3186787, at *6 (emphasis in original). The plaintiffs therefore argue that anyone whose claim would be precluded by the doctrine of unclean hands because they actually used a pirate device and thereby violated the FCA is by definition not a member of the putative class. To state the argument another way, anyone who *is* a member of the putative class has a claim that is *not* prone to a meritorious defense of unclean hands. *See* Memo. at 10.

Although the argument has some surface appeal, it is fatally flawed because it conflates allegation with proof. At some point in the future, the plaintiffs may seek to certify a class of plaintiffs that fits within the parameters Judge Seybert identified in *Calabrese II*. In doing so, they may have to establish that there exists a sufficient number of class members and that the named plaintiffs have claims typical of those belonging to other putative members; proving each may require a factual determination of who did or did not use a pirate decoder box. To date, however, there has been no such showing, only a series of allegations that remain untested. Striking the defense of unclean hands at this stage would at best be premature. *See William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984).

9

If the named plaintiffs eventually succeed in persuading the court to certify a class in this case, the court will have the discretion to revisit the issue on the theory that the certification decision necessarily renders the unclean hands defense non-viable. *See* Fed. R. Civ. P. 23(d)(4), (5) (granting the court the power to amend the pleadings to eliminate allegations as to absent persons in the event a class is not certified or to amend the pleadings in accordance with Fed. R. Civ. P. 16). I hasten to add that I do not intend to predict whether the court will exercise such discretion, nor do I mean to opine as to whether it should do so. I merely note that a motion to strike the defense of unclean hands will at a minimum be premature until the question of class certification is ripe for decision.

Moreover, striking the equitable defense of unclean hands might never be appropriate given the nature of the defendants' assertions. They contend that *anyone* who obtains a pirate decoder box does so with the intent to use it to steal cable programming. The defendants may thus seek to disprove an essential fact predicate of the plaintiffs claims in a manner that would both form a legal defense (based on the doctrine of unclean hands) and reduce the membership of the putative class to zero (based on Judge Seybert's definition of eligibility for class membership). Whether it makes the most sense to test the defendants' ability to make such a showing at the class certification stage or to await trial on the merits is a question not before me; either way, there is a potentially viable defense based on the doctrine of unclean hands to the defendants claims that makes relief under Rule 12(f) unavailable. Moreover, because striking the defense would not preclude the defendants from challenging any of plaintiffs' assertion of membership in the putative class based on precisely the same theory of unclean hands, the plaintiffs cannot possibly be prejudiced by the denial of this prong of their motion.

4. The Affirmative Defenses To The State Law Deceptive Practices Claim

In addition to their claims under federal law, the plaintiffs claim that Cablevision and its Attorneys violated New York's statutory prohibition against deceptive business practices, which is codified in Section 349 of the State's General Business Law. *See* Complaint ¶¶ 157-168. Cablevision seeks to raise two affirmative defenses to that claim. Specifically, it asserts that "the allegedly deceptive practice was fully disclosed to plaintiffs" and that in any event the plaintiffs lack standing because they "did not suffer an injury by reason of any deceptive act or practice[.]" Cablevision Answer ¶¶ 173-174. Here again the plaintiffs predicate their motion to strike on the faulty assertion that Judge Seybert previously rejected the defenses on the merits in denying the motions to dismiss – when instead she merely accepted the plaintiffs' factual allegations as true for purposes of determining the viability of the complaint. If the plaintiffs fail to establish the truth of their allegations as the case proceeds, Cablevision's proposed defenses to the state law claim may well succeed. In addition, in this instance as in all other, the plaintiffs have done nothing to establish prejudice than to say that they will suffer it. Their motion to strike the defenses to the deceptive practices claim is therefore denied.

5. The Reservation Of Additional Affirmative Defenses And Counterclaims

There is one aspect of the plaintiffs motion to strike that does have merit. The Attorneys have included in their Answer a statement that they "reserve any and all rights to assert" either additional affirmative defenses or additional counterclaims on the basis of "additional information learned during the course of this action." Attorneys Answer ¶¶ 177, 193. Such assertions do nothing to achieve the purpose of a proper pleading, which is to provide fair notice to opposing parties of the issues in the case. *See U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., Off. of Workers' Comp. Prog., U.S. Dept. of Labor,* 455 U.S. 608, 613 (1982). Indeed, the Attorneys

concede that their reservation of rights will not excuse them from meeting the requirements of Rule 15 of the Federal Rules of Civil Procedure should they wish to add new defenses or counterclaims. DE 211 at 13. And while they do not say so explicitly, I infer that they also agree that if they seek to make such an amendment after the deadline specified in an applicable scheduling order, they will also have to satisfy the more exacting good cause requirement of Rule 16(b). *See*, *e.g.*, *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000); *Colorado Capital v. Owens*, 227 F.R.D. 181, 186 (E.D.N.Y. 2005).

The reservations of rights in the challenged paragraphs of the Attorneys' Answer therefore accomplishes no legitimate purpose. As the Attorneys candidly concede, they included the paragraphs simply because they must, in their view, seek extra protection against the plaintiffs' "sometimes unreasonable positions." DE 211 at 13. In the context of defending otherwise unreasonable statements in a pleading, the argument is more ironic than persuasive. It is at any rate insufficient.

Because the challenged paragraphs identify no defense or counterclaim that could succeed on the merits, but merely express a willingness to do so in appropriate circumstances, they are eligible for striking under Rule 12(f). *See County Vanlines Inc. v. Experian Information Solutions, Inc.*, 205 F.R.D. 148, 158 (S.D.N.Y. 2002) (granting plaintiff's motion to strike affirmative defense that purported to reserve the right to assert additional affirmative defenses). And to the extent that a denial of the plaintiffs' motion to strike might be misinterpreted as excusing the otherwise applicable constraints of Rules 15 and 16 to any future attempt to amend the Attorneys Answer, there is at least some prejudice that could result from allowing the challenged paragraphs to remain. For that reason, I grant the motion to strike them.

B. The Attorneys' Counterclaim Against Gevanter

The plaintiffs identify three reasons to dismiss the Attorneys' counterclaim against Gevanter for injuries they claim to have sustained by his alleged breach of an earlier settlement agreement. First, they argue that the Attorneys may not bring the counterclaim because, at a conference on November 18, 2004, their counsel stated that "they did not intend to file any counterclaims." Memo. at 21-22 (*see* DE 281 for missing pages of Memorandum of Law). Second, they argue that the counterclaim was previously ruled insufficient, and third, they contend that the counterclaim is duplicative of the Attorneys' Second Affirmative Defense. *Id*. at 22-24. In addition to disagreeing with the plaintiffs' arguments, the Attorneys also contend that the motion to strike the counterclaim is untimely and should be denied for that reason as well. *See* DE 211 at 16-17.

I need not address the timeliness of the plaintiffs' motion to dismiss because their arguments in support of the motion are all plainly without merit. The first of those arguments has already been rejected by Judge Irizarry who stated, after reviewing a transcript of the conference of November 18, 2004, "there is nothing in the minutes of that last conference that is a definitive statement by the defendants that they would not make a counterclaim." DE 217 at 14 (Transcript of proceedings dated Jan. 11, 2005). The second argument fails for the same reason that most aspects of the motion to strike were found wanting, namely, that Judge Seybert's previous rulings on the adequacy of the plaintiffs' pleadings said nothing definitive about the merits of any defense to the plaintiffs' substantive claims. Finally, the proposition that the Attorneys' counterclaim merely duplicates one of their affirmative defenses is simply specious, as the latter seeks no more than to stave off a judgment while the former, if successful,

will entitle the Attorneys to obtain relief from Gevanter beyond the dismissal of this lawsuit. The plaintiffs' motion to dismiss the counterclaim is therefore denied.

III.   Conclusion

For the reasons set forth above, I grant the plaintiffs' motion to strike paragraphs 177 and 193 from the Attorneys' Answer To Plaintiffs' Fourth Amended Complaint and deny in all other respects the plaintiffs' motion to strike affirmative defenses and dismiss a counterclaim.

**SO ORDERED.**

Dated: Brooklyn, New York
March 6, 2006

/s/ James Orenstein
JAMES ORENSTEIN
U.S. Magistrate Judge