UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
CALABRESE et al.,

        Plaintiffs,

      -against-

CSC HOLDINGS, INC. et al.,

        Defendants.
------------------------------------------------------x

**MEMORANDUM AND ORDER**

02-CV-5171 (DLI)(JO)

**DORA L. IRIZARRY, U.S. District Judge:**

The litigation tactics employed in this case would test the patience of even the most forgiving federal district court judge. The problem appears to emulate from the parties' refusal to accept the finality of the court's decisions, choosing instead to make motions to reconsider and appeal the decisions of the court repeatedly. Neither party is without blame – in fact, it seems that both plaintiffs and defendants are content to engage in procedural trench warfare on in the battlefield of discovery, with the decisions, orders and respect for the court becoming collateral damage. The aim of this Memorandum and Order is to finally resolve one of the most intractable issues in this action: what discovery is permitted from "nonparty potential class members" ("NPCM").[1] NPCMs are individuals who might be members of a class if certification is later granted, but who are not yet, and

---

[1] As explained in more detail in the background portion of this Memorandum and Order, the issue comes before the court on a 28 U.S.C. § 636(b)(1)(A) motion to reconsider a May 24, 2006 Minute Order of United States Magistrate Judge James Orenstein (ECF Docket No. 298) denying the application of defendants Shaun K. Hogan, Daniel J. Lefkowitz, Wayne R. Louis, Patrick J. Sullivan and Lefkowitz, Louis & Sullivan, L.L.P. ("the Attorney Defendants") to compel production of the names of 240 NPCMs. (ECF Docket No. 308). Judge Orenstein later denied the Attorney Defendants' motion for reconsideration of this order. (ECF Docket No. 306). The court notes that this, therefore, is the third time the court is considering the Attorney Defendants' motion. The court expects that whichever party feels aggrieved by this Memorandum and Order will make a motion requesting the court reconsider. However, in the absence of a change in controlling law or a change in material facts, the parties are cautioned that a motion to reconsider may result in the imposition of sanctions.

may never be, a party to the litigation. For the reasons set forth below, defendants' appeal from U.S. Magistrate Judge James Orenstein's Order dated May 24, 2006 denying defendants' motion for reconsideration of his denial of certain discovery is dismissed.[2]

In this action, plaintiffs allege a scheme by defendants[3] to defraud cable subscribers who purchased certain cable equiptment ("pirate boxes") by falsely accusing these cable subscribers of stealing cable in an attempt to obtain a settlement, in violation of state and federal laws. Plaintiffs' strategy during the last two years focused on obtaining discovery from defendants to broaden their class by finding additional victims of the alleged scheme (NPCMs), while at the same time preventing defendants from obtaining reciprocal discovery regarding the NPCMs. Defendants, for their part, have sought the exact opposite: to prevent plaintiffs from obtaining records which would allow them to broaden their class while, at the same time, attempting to obtain reciprocal discovery from NPCMs to pick off potential plaintiffs (NPCMs) who will be unable to prove their claims, or perhaps simply to make the class certification process as onerous as possible for both the NPCMs and plaintiffs.

---

[2] In determining the issue, the court is governed by the law of the case and has not upset or overturned prior decisions in this case by other district court judges. *See Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, LLP 322 F.3d 147, 166 (2d Cir 2003) ("[w]e have limited district courts' reconsideration of earlier decisions . . .by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'") (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).

[3] In addition to the Attorney Defendants, the other defendants are CSC Holdings, Inc., James F. Magee, Robert Astarita, Amy Groveman and Allied Account Services, Inc. For the purposes of his Memorandum and Order, all defendants will be collectively referred to as "defendants," unless otherwise noted.

**Background**

United States District Judge Joanna Seybert's decision of September 5, 2003 (Docket No. 46) contains the genesis of the dispute regarding what discovery should be permitted from NPCMs. The September 5, 2003 decision denied plaintiffs' motion for class certification on the grounds that the plaintiffs had failed to satisfy the numerosity requirement of Fed R. Civ. Pro. 23(a)(1) because they had not provided a reasonable estimate of the number of class members. *Calabrese v. CSC Holdings, Inc.*, 02-CV-5171 (E.D.N.Y. Sep. 5, 2003) (Docket No. 46). Judge Seybert found that plaintiffs had not provided a reasonable estimate of the number of class members because they had defined the putative class as "CSC's cable television subscribers in New York State who have been victimized by Defendants' scheme." *Id.* Judge Seybert held that:

> the Court finds that the only individuals 'victimized' by the Defendants' 'scheme' are those who can plead that they did not in fact use the pirate box to intercept cable programing service. Plaintiffs' putative class can therefore only consist of those individuals who will allege that they did not use the pirate boxes to intercept cable programing service. The Plaintiffs have not made any attempt to establish that there are a large number of individuals that will fit into this class, or even to 'reasonably estimate' the number. In fact, even accepting all of the Plaintiffs' allegations as true, there is no indication that the Plaintiffs' class will consist of any individuals beyond those named in the Complaint. As such, the Plaintiffs have failed to establish the numerosity requirement and no class can be certified.
>
> Although the Plaintiffs' motion must be denied for failure to satisfy Rule 23(a)(1), the Court will deny this motion without prejudice.

*Id.* at 6-7. Plaintiffs initially made a motion to reconsider the September 5, 2003 order (ECF Docket No. 51), but withdrew the motion in exchange for being permitted to file a third amended complaint (ECF Docket No. 49). After serving the amended complaint, plaintiffs requested that United States Magistrate Judge Arlene R. Lindsay, then assigned to the case, allow discovery to go forward on the issue of numerosity. (ECF Docket No. 55). The defendants objected to the plaintiffs' application

and requested discovery be limited to the named plaintiffs. (ECF Docket Nos. 56, 57). On October 9, 2003, Judge Lindsay permitted discovery to go forward on the issue of numerosity. (ECF Docket No. 58). Both parties appealed the magistrate judge's order. (ECF Docket Nos. 60, 65, 75). The crux of plaintiffs' objections was that the court should not allow discovery of "absent class members," later defined as NPCMs. *Id.* Defendants asked for reconsideration of the order because they wished to have more discovery from NPCMs. *Id.* On November 12, 2003, Judge Lindsey denied defendants' motion for reconsideration and ruled that plaintiffs were to provide a reasonable estimate of the number of class members as well as additional information about the NPCMs demonstrating that class certification was appropriate. (ECF Docket No. 60, Endorsed Order). Under the order, defendants were permitted additional discovery of the NPCM. Likewise, plaintiffs were permitted numerosity discovery from defendants, even after the numerosity requirement was met. *Id.*

On December 18, 2003, Judge Seybert issued a Memorandum and Order dismissing plaintiffs' appeal of Judge Lindsay's October 9, 2003 order. (ECF Docket No. 78). Judge Seybert reaffirmed her September 5, 2003 decision requiring plaintiffs to make a "reliable showing . . . that a substantial number of individuals can be identified who can affirmatively plead that they were defrauded by the Defendants'– that is that (1) they did not in fact use a pirate box and (2) they did in fact rely on Defendants' representations." *Id.* at 4. Judge Seybert went on to state that plaintiffs are permitted discovery "to allow plaintiffs access to the information that they will need in order to make the showing required of them." *Id.* at 6. Similarly, Judge Seybert found that defendants have the right to discovery regarding "the claims of putative class members." *Id.* Concerned that the parties might construe Judge Lindsay's order "to allow the parties to engage in discovery well

4

beyond the scope of the issues intended," Judge Seybert modified the order, directing that "[t]he parties shall narrowly tailor all discovery requests to these issues and shall not attempt to engage in discovery relating to the substance of the claims of unnamed potential class members, except to the extent the substance of the claims relates to the inclusion of said parties in the class." *Id.* To prevent abuse, defendants' discovery requests served on the NPCMs were required to be in writing. *Id.*

Plaintiffs moved for reconsideration of Judge Seybert's December 18, 2003 Memorandum and Order. (ECF Docket No. 87). On August 17, 2004, Judge Seybert issued another Memorandum and Order denying the motion to reconsider and reaffirming her prior decisions:

> As Plaintiffs correctly point out, this class has not yet been certified, which precludes the potential class members from technically being classified as 'absent class members.' However, it would not be prudent to classify these potential class members as 'non-parties.' This case presents special circumstances in that Plaintiffs, on the one hand, would like to include these 'non-parties' in the putative class, but, on the other hand, wish to preclude Defendants from reciprocal discovery on the issue of numerosity concerning these same 'non-parties.' The Court does not agree with Plaintiffs' contentions and to the extent that it was unclear in the December 18, 2003 Order, the Court is clarifying that the Plaintiffs have the burden of establishing numerosity and that they may engage in discovery in order to determine whether there are individuals, other than those already named as Plaintiffs in this action, who qualify for inclusion in the class. The Court also intends that the Defendants have a reciprocal right to limited, relevant discovery concerning whether the individuals identified by the Plaintiffs as potential class members actually qualify as members of the class, so that they may have the opportunity to disprove numerosity. As such, this limited discovery may only relate to the issue of whether potential class members qualify for inclusion in the class, within the limits set forth in this, and the previous, orders of the Court.

*Id.* at 12. On August 27, 2004, Judge Seybert lifted the stay previously imposed on this discovery. (ECF Docket No. 155). On September 17, 2004, plaintiffs appealed Judge Seybert's August 17,

2004 Memorandum and Order to the Second Circuit. (ECF Docket No. 160).[4] Plaintiffs also moved for a stay of the August 17, 2004 Memorandum and Order pending the appeal, which was ultimately denied. (ECF Docket No. 168). The appeal was dismissed by the Second Circuit on February 23, 2005 for lack of jurisdiction. (ECF Docket No. 201).

The defendants' entitlement to discovery from NPCMs having been addressed, and the discovery obligations of the parties being reasonably well established, on April 7, 2005, Judge Orenstein held a discovery conference and asked the parties to provide a report addressing all outstanding discovery matters. (ECF Docket No. 221).[5] On the issue of discovery from NPCMs, Judge Orenstein proposed that plaintiffs identify the NPCMs by an *in camera* submission, *ex parte*, and provide a redacted version to defendants. The *in camera* submissions would allow potential class members to attest to their membership in the proposed class, in a form affidavit to be agreed to by both parties. *Id.* Predictably, plaintiffs wished to keep the identities of the NPCMs

---

[4] The case was reassigned to the Honorable Dora L. Irizarry on September 13, 2004.

[5] In an April 15, 2005 submission responding to Judge Orenstein's April 7th Order, defendants, apparently for the first time and in an act of brazen gamesmanship, stated that they could not turn over certain discovery related to numerosity because the "Privacy Act" forbids cable providers from turning over certain subscriber information without the subscriber's consent. (ECF Docket No. 222). Defendants construed the Privacy Act to prohibit the numerosity discovery sought by plaintiffs, namely the identity of the allegedly thousands of subscribers who the defendants accused of purchasing pirate boxes. *Id.* Defendants proposed that plaintiffs identify the potential class members, all of whom are cable subscribers accused of purchasing pirate boxes, and then defendants would release information about those particular subscribers, since the participating subscribers would be deemed to have consented to the disclosure under the Privacy Act. *Id.* In an April 18, 2005 Civil Conference Order, Judge Orenstein requested that the parties brief issue of the implications of the Privacy Act on discovery. (ECF Docket No. 226). Its unclear how this issue was resolved, but in the end defendants provided numerous documents to plaintiffs, without Privacy Act implications. ("Phase III documents.") (ECF Docket No. 252).

anonymous while defendants wanted disclosure of the identities of the NPCMs, ostensibly to allow the defendants to serve additional discovery on the NPCMs. (ECF Docket No., 230, 232). On May 18, 2005, Judge Orenstein ruled that plaintiffs must provide "unredacted affidavits from all potential absent class members. . . by June 16, 2005." (ECF Docket No. 236). The deadline was later extended to June 24, 2005. (ECF Docket No. 240, Endorsed Order). On June 24, plaintiffs provided thirty-four unredacted affidavits from NPCMs, each of which attested to the individual's membership in the potential class. Plaintiffs now had a putative class of forty, the minium needed to satisfy the numerosity requirements. (ECF Docket No. 242). However, on June 29, 2005, Judge Orenstein clarified his May 18, 2005 Order and directed plaintiffs to provide unredacted affidavits from "all potential absent class members, not simply the minimum needed to satisfy the numerosity requirement for maintaining a class action." (ECF Docket No. 243). On July 27, 2005, plaintiffs provided more than sixty affidavits from NPCMs attesting to their membership in the class, as well as a list of hundreds of other NPCMs from whom plaintiffs could not get affidavits for one reason or another. (ECF Docket No. 247). Claiming that the numerosity requirement was satisfied, plaintiffs asked the court to certify the class. *Id.* Several additional affidavits from potential class members were provided on August 17, 2005. (ECF Docket No. 251).

Defendants, however, were not satisfied with the affidavits and sought to take additional discovery from the NPCMs, asserting that Judge Seybert's and Judge Lindsay's prior rulings permitted them to do so. (ECF Docket No. 253-254, 257, 258, 260). Plaintiffs, however, took the position that additional discovery from NPCMs was an "anathema to the very concept of Class Action litigation." (ECF Docket No. 262). On December 27, 2005, Judge Orenstein decided the issue in favor of plaintiffs and limited the defendants' discovery to "interrogatories that test the

numerosity issue by seeking information *about* nonparty potential class members, but not *from* them." (ECF Docket No. 269). Defendants promptly moved for reconsideration of the December 27, 2005 order because they believed that Judge Seybert's prior orders allowed them more expansive discovery, directly from NPCMs. On March 7, 2006, Judge Orenstein granted the defendants' motion for reconsideration on the grounds that his ruling was inconsistent with prior rulings in the case made by Judge Seybert and allowed defendants to serve "limited interrogatories" directly on the NPCMs. (ECF Docket No. 287). Plaintiffs, predicably, asked for reconsideration of the March 7, 2006 Order. (ECF Docket No. 298, 306). Reconsideration was denied. (Docket No. 306). To exercise their rights to additional discovery from the NPCMs, defendants requested that the court compel production of the names of 240 NPCMs. Judge Orenstein denied the request in a May 24, 2006 Civil Conference Minute Order. (ECF Docket No. 298). Defendants then moved for reconsideration of the denial of their motion to compel the identities of the 240 NPCMs. (ECF Docket No. 304). The motion for reconsideration was denied. (ECF Docket No. 306).

In the instant motion, defendants now appeal from Judge Orenstein's denial of their motion for reconsideration of his denial of their motion to compel production of the identities of the 240 additional NPCMs, ostensibly so defendants can obtain additional numerosity discovery from the NPCMs. For the reasons set forth below, defendants' appeal is dismissed.

## Discussion

Out the outset, the court notes that the parties have an affinity for moving for reconsideration of orders of the court. Motions for reconsideration are not to be made simply because a party disagrees with the court's decision, but rather should only be made when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent a manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Similarly, the court's plenary power to review its own interlocutory orders may be applied in circumstances "when it is consonant with justice to do so." *U.S. v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1983). The parties in this action, however, have rarely cited anything more than a disagreement with the court's decisions when making a motion for reconsideration, creating a system whereby the winner appears to be the party who prevails on the motion two out of the three times it is brought before the court, a system that both lacks efficiency and shows a disrespect for the court's decisions. With respect to the instant motion, 28 U.S.C. § 636 provides that a district judge "may reconsider" any pretrial matter decided by a magistrate judge "where it has been shown that the magistrate judges order is clearly erroneous or contrary to law." *Id.* Judge Orenstein's March 7, 2006 and May 24, 2006 Civil Conference Minute Orders were neither "clearly erroneous" nor "contrary to law" and this court will not set them aside.

Judge Seybert's decisions of December 18, 2003 and August 17, 2004 clearly entitle defendants to limited discovery from NPCMs and further allow the discovery demands to be served directly upon the NPCMs, rather than upon the named plaintiffs. Plaintiffs' counsel has expended a tremendous amount of energy seeking to undo these decisions, including numerous objections, motions to reconsider, two appeals to the Second Circuit and a motion for a stay of the August 17, 2004 order. Plaintiffs have even strained their credibility with a completely spurious argument that the court's referral of their motion to stay enforcement of Judge Seybert's August 17, 2004 order to Judge Orenstein allowed Judge Orenstein to somehow alter the law of the case with respect to the discovery that could be served upon NPCMs.[6]

---

[6] The plaintiffs' arguments are further muddled because the issue was not whether Judge Orenstein has the power to overrule Judge Seybert when referred a motion from another

Plaintiffs' energy would have been better spent determining the scope of discovery permitted under Judge Seybert's decisions, namely how to most effectively identify NPCMs who (1) did not in fact use a pirate box and (2) did in fact rely on defendants' representations. Almost by accident, the plaintiffs did exactly that, and have provided more than sixty affidavits from NPCMs attesting to their membership in the class, thus providing defendants the limited discovery of the NPCMs envisioned by Judge Seybert. (ECF Docket No. 242, 247). With respect to the instant motion, to the extent that plaintiffs are confident that the information provided by the more than sixty NPCMs who have submitted affidavits attesting to their membership in the class established numerosity, the court will not disturb Judge Orenstein's denial of defendants' motion to compel the production of the identities of the remaining NPCMs. Thus, although the plaintiffs must respond to the limited written discovery served upon the previously identified NPCMs, if plaintiffs do not wish to reveal the identities of the additional NPCMs, the court will not require them to do so. Of course, plaintiffs proceed at their own risk since their ability to meet the numerosity requirements of Fed R. Civ. Pro. 23(a)(1) depends upon the number of NPCMs who can attest that they (1) did not in fact use a pirate box and (2) did in fact rely on defendants' representations, in accordance with Judge Seybert's December 18, 2003 Memorandum and Order.

The court's holding comports with the Second Circuit's recent decision in *In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006). In *In re Initial Public Offering Securities Litigation,* the Second Circuit held that the court is required to "resolve factual disputes relevant to each Rule 23 requirement" even where those determinations overlap or are identical to "a merits

district judge, an issue that the court need not address, but rather whether altering the decision with respect to discovery from NPMC was warranted, which, upon reconsideration, Judge Orenstein correctly determined it was not.

issue." *Id* at 42. Likewise, it should not be forgotten that plaintiffs bear the burden of demonstrating numerosity. *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir 1999) ("[t]he party seeking to certify a class bears the burden of demonstrating numerosity, commonality, typicality, and adequacy."). The Circuit also provided the court with a framework for resolving disputed class certifications issues, such as this one: the district court is required to be sure that enough pre-certification discovery is provided so that it is satisfied that each Rule 23 requirement has been met, without receiving so much discovery that "a Rule 23 hearing will extend into a protracted mini-trial of substantial portions of the underlying litigation." *In re Initial Public Offering Securities Litigation*, 471 F.3d at 41.

Applying the Circuit's holdings to this matter, in determining whether class certification is appropriate, the court will evaluate whether the plaintiffs have met the numerosity requirement and will examine whether the members of the putative class used the pirate boxes and relied on the defendants' representations. The court is skeptical that additional discovery from NPCMs will affect the plaintiffs' certification motion because the court is already aware that there are more than sixty NPCMs who meet Judge Seybert's requirements. So long as plaintiffs are confident of being able to satisfy the numerosity requirement, additional discovery from the NPCMs is not necessary or warranted.

To the extent that defendants are seeking additional discovery from the NPCMs on the commonality prong of the class certification test, (to demonstrate that the NPCMs have individual issues with respect to the use of the pirate box and with respect to their reliance, issues that predominate over the issues common to the class), the court previously rejected defendants' argument. *See Calabrese v. CSC Holdings, Inc.*, 02-CV-5171, slip op. 15-16. (E.D.N.Y. Sep. 5,

11

2003) (Docket No. 46). Judge Seybert previously stated that:

> [t]he court notes that there are a numerosity of individual issues of fact, resolution of which is essential to the final adjudication of this case. The court recognizes that these individual issues may require separate "mini-trials" and may substantially slow the adjudication of this case. However, as a whole, the court finds that common issues of fact and law . . . predominate this action.

*Id.* at 16. Thus, whether each individual NPCMs can prove that they did not use the pirate boxes and relied on the defendants' representations, as they swear in the affidavits submitted to the court, can be tested at a later time and should not be addressed by additional pre-certification discovery.[7] *See In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 140 (2d Cir 2001) (upholding class certification while noting that individualized issues of damages and mitigation might require individualized inquiry); *Green v. Wolf Corp.*, 406 F.2d 291, 300-01 (2d Cir.1968) ("[t]he district court may use the procedures suggested by Rule 23 to cope with the [distinctions between plaintiffs], if, indeed, they exist."). Additional discovery for the purpose of establishing (or defeating) the commonality of claims among the putative class is denied.

Defendant's appeal is dismissed because the court finds that the numerosity discovery provided by plaintiffs satisfies Judge Seybert's previous orders. Defendants are not entitled to any further discovery from NPCMs. In accordance with prior orders of this court, plaintiffs are directed to respond to all outstanding discovery requests which were served upon the identified NPCMs prior to the filing of this Memorandum and Order. Defendants shall file a letter with the court within five

---

[7] The court notes that it is uncommon for a defendant to seek names of NPCMs. It is much more common for a plaintiffs seek the names of NPCMs in an attempt to broaden their class, a tactic courts disfavor. *See Dziennik v. Sealift, Inc.,*, 05 CV 4659, 2006 WL 1455464 *1 (E.D.N.Y. May 23, 2006)("[c]ourts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification.

(5) days of receiving the outstanding NPCM discovery, notifying this court of the same, at which point the court will set a briefing schedule for the class certification motion.[8] Once class certification is addressed, parties may request permission to move for summary judgement, if desired.

SO ORDERED.

DATED:   Brooklyn, New York
         March 7, 2007

                                              /s/
                                    DORA L. IRIZARRY
                                    United States District Court Judge

---

[8] It appears that plaintiffs served a motion for class certification upon defendants sometime in April of 2006, but never filed the motion with the court. That motion is terminated without prejudice to renew in accordance with the results of NPCM discovery.